25CA2112 Peo v Burney 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2112
Douglas County District Court No. 24CR940
Honorable Daniel Warhola, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Dontae Lahmar Burney,

Defendant-Appellee.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE BROWN
Harris and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

George Brauchler, District Attorney, Megan Rasband, Chief Deputy District Attorney, Danielle Jaramillo, Chief Deputy District Attorney, Lauren Raible, Deputy District Attorney, Castle Rock, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Bryan Kirkland Hall, Deputy State Public Defender, Castle Rock, Colorado, for Defendant-Appellee

¶ 1   The District Attorney for the Twenty-Third Judicial District appeals the district court's order dismissing ten charges against defendant, Dontae Lahmar Burney, as a sanction for discovery violations.  We affirm.

## I.   Background

¶ 2   In September 2024, the prosecution charged Burney with sixteen counts of assault, child abuse, and menacing, naming his former girlfriend, Amber Lynn, and her four children as victims. Later that month, the prosecution successfully moved to add another child abuse charge.  From September to November, the prosecution continued to investigate and disclose materials to defense counsel.  In November, the prosecution successfully moved to add two additional assault charges and one additional child abuse charge.  Throughout April and May 2025, the prosecution disclosed additional materials to defense counsel, including police reports from June 27 and September 8, 2024, when Lynn reported that she believed Burney had tampered with the lug nuts on her car in retaliation for his arrests on the charges in this case.

¶ 3   On May 9, 2025, the prosecution moved to add ten additional assault and child abuse counts.  The prosecution also moved to

1

continue the jury trial due to witness availability. On May 12, defense counsel moved to continue a motions hearing to allow him time to review the most recently disclosed discovery. After a hearing held two days later, the district court continued the motions hearing, set a new trial date for November, and granted the prosecution's motion to add counts, bringing the total number of charges against Burney to thirty.

¶ 4    A couple weeks before trial, defense counsel moved for sanctions, alleging that the prosecution had committed fifty-two Crim. P. 16 violations by failing to timely disclose materials and information. The motion detailed the date of each delayed disclosure and identified the discovery packet number or witness endorsement involved.

¶ 5    After a hearing, the district court determined that the prosecution had committed all fifty-two Crim. P. 16 violations. As relevant to this appeal, the court found that alleged violations 2-18, 21-25, and 42, which included the reports concerning lug nut tampering, involved "impeachment evidence of the victim" that should have been disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963), and that was "relevant and related to this case" under Crim.

P. 16(I)(a)(1). The court also found that the redaction of a forensic interview, violation 43, was a "willful violation" of the prosecution's obligations under Crim. P. 16, although it declined to find that the individual prosecutors engaged in willful conduct based on their representation that a paralegal had made the redaction. And the court found that the prosecution had engaged in a pattern of neglect — based on fifty-two discovery violations in six months — and that Burney had been prejudiced by the "continued late disclosures."

¶ 6 Based on the totality of the circumstances, the court dismissed counts twenty-one through thirty as a deterrent sanction. Notwithstanding the sanction, the prosecution asked that it be allowed to use the evidence related to the dismissed charges as CRE 404(b) evidence, and the court initially granted the request.

¶ 7 The next day, the court issued a written order memorializing its oral ruling. It clarified that it had found both a pattern of neglect reflected in the fifty-two discovery violations and a willful violation of Crim. P. 16 due to the prosecution's redaction of the forensic interview. It also reversed its ruling allowing the prosecution to introduce evidence related to the dismissed charges

as CRE 404(b) evidence, reasoning that allowing the prosecution to do so would undermine the deterrent sanction.

¶ 8    The prosecution moved the court to reconsider its ruling. The court addressed the motion on the morning of the day Burney's jury trial was supposed to begin. The court supplemented its earlier ruling but declined to reconsider it, and the prosecution immediately filed this appeal.

## II.    Analysis

¶ 9    The People contend that the district court erred by (1) concluding that the forensic interview redaction (violation 43) was a *Brady* violation; (2) determining that the lug nut investigation information (violations 2-18, 21-25, and 42) constituted impeachment evidence that the prosecution failed to timely disclose under *Brady* and Crim. P. 16(I)(a)(1); and (3) imposing a sanction that was too severe.

¶ 10   We reject the People's first contention because the court never determined that the redaction amounted to a *Brady* violation. Regarding the remaining contentions, the People concede that "there are numerous violations [they] don't challenge on appeal" and argue that "[w]hether it's [fifty-two] violations, [fifty-two]

4

violations minus the lug nut investigations, or another number calculated a different way, the court's sanctions are too severe." But we conclude that the court would have imposed the same sanction, even if the prosecution had committed only the twenty-nine violations that are not challenged on appeal. And we conclude that the sanction was not an abuse of discretion. So we need not address the People's second contention on the merits because, even assuming the court erred, any error was harmless. *See* Crim. P. 52 (we disregard any error that does not affect substantial rights).

### A. The District Court Did Not Find that the Redaction Was a *Brady* Violation

¶ 11    The People contend that the district court erred by concluding that violation 43, the redaction of a forensic interview, was a *Brady* violation. But as Burney argues, the court made no such determination as to violation 43. Instead, the court determined that the redaction violated Crim. P. 16(I)(a)(1).

¶ 12    At the Crim. P. 16 motions hearing, the court said it "didn't like the optics" of the redaction and warned that the prosecution should be careful going forward "to not redact discovery before giving it to [d]efense." It said, "[T]hat's asking for Rule 16 violations

5

and *Brady* violations." The court determined that the redaction was "a technical violation" of Rule 16. The court acknowledged that the redaction was of an address that was later subject to a protective order, but it reasoned that the prosecution should have communicated with defense counsel about it and that it was "still technically a Rule 16 violation." After the prosecutor explained that a paralegal had redacted the interview, the court said it could not find that the redaction was willful. But after the hearing, the court issued a written order clarifying that it had found "a willful violation of Crim. P. 16 due to the [district attorney's] [o]ffice purposefully redacting discovery prior to its disclosure to defense [counsel] without notifying defense [counsel] or the [c]ourt of the redaction."

¶ 13    On the morning of the scheduled trial, the prosecution moved the court to reconsider its sanctions and sought clarification regarding whether the court had found that the redaction was a willful violation of Rule 16. After conducting a more thorough *Brady* analysis regarding the lug nut investigation evidence, the court said,

> I think there's also argument from the
> [prosecution] as far as *Brady* on other issues.
> I don't recall making a *Brady* finding on other

issues. I do find that the People, whether it's a paralegal or not, it is a willful act to redact discovery. There's no two ways about that. You can't accidentally redact a video.

¶ 14 We acknowledge that the court's various rulings on this issue are somewhat confusing. But in the end, the court determined that the prosecution had willfully violated Crim. P. 16(I)(a)(1) by redacting the forensic interview; it did not determine that a *Brady* violation had occurred. *See Andrews v. Miller*, 2019 COA 185, ¶ 8 (we review the interpretation of a court's order de novo). Because the People do not challenge violation 43 on any other ground, we perceive no reason to disturb that part of the court's order.

## B. The Sanction Was Not Too Severe

¶ 15 The People contend that the district court abused its discretion by dismissing ten counts as a sanction. Even assuming the court found only twenty-nine discovery violations, we disagree.

### 1. Applicable Law and Standard of Review

¶ 16 Crim. P. 16 controls discovery in criminal cases, including the prosecution's disclosure obligations. In the event a party fails to comply with the discovery rules, Crim. P. 16(III)(g) permits a trial

7

court to order a sanction as it "deems just under the circumstances."

¶ 17　The court "should impose the least severe sanction that will adequately remedy the violation." *People v. Daley*, 97 P.3d 295, 298 (Colo. App. 2004). But the court must fashion a remedy that protects the integrity of the truth-finding process and deters discovery-related misconduct. *People v. Whittington*, 2024 CO 65, ¶ 19. Sanctions for a Crim. P. 16 violation may "be curative or, when there is 'willful misconduct or a pattern of neglect demonstrating a need for modification of a party's discovery practices,' be deterrent or punitive." *Id.* (quoting *People v. Lee*, 18 P.3d 192, 196-97 (Colo. 2001)). In selecting an appropriate sanction, the court must consider the following factors: "(1) the reason for and degree of culpability associated with the violation; (2) the extent of resulting prejudice to the other party; (3) any events after the violation that mitigate such prejudice; (4) reasonable and less drastic alternatives to [dismissal]; and (5) any other relevant facts." *People v. Tippet*, 2023 CO 61, ¶ 37 (citation omitted).

¶ 18    The trial court has broad discretion to impose a discovery sanction, *id.* at ¶ 34, and we will not reverse its decision absent an abuse of that discretion, *see People v. Mendez,* 2017 COA 129, ¶ 32. A court abuses its discretion if its decision is based on a misapplication of the law or is manifestly arbitrary, unreasonable, or unfair.  *People v. Grant,* 2021 COA 53, ¶ 12.  Under this standard, we do not ask whether we would have ruled as the trial court did but instead consider whether the trial court's decision fell within a range of reasonable options.  *Tippet,* ¶ 64.

### 2.    Additional Background

¶ 19    After finding fifty-two Crim. P. 16 violations, the district court considered what would be an appropriate sanction.  The court expressed frustration "that there [was] not an acknowledgement from the [prosecution] regarding some of these blatant Rule 16 violations."  The court found that there was a pattern of neglect within this case because the fifty-two violations occurred over the

9

course of six months.[1]  As explained, the court also found that the prosecution's redaction of the forensic interview was willful.  Under the "totality of the circumstances," including the pattern and willfulness findings, and after "considering *Tippet* [and] *Whittington*," the court elected to dismiss counts twenty-one through thirty as a "sanction to deter [such] future discovery practices."

¶ 20    The court admittedly "struggle[d] to find prejudice" given the passage of time since the disclosures were made, but it reasoned that "[t]here is prejudice to [d]efense regarding continued late disclosure by the" prosecution and noted that there were late endorsements of witnesses "in addition to the vast late disclosure of

---

[1] During the Crim. P. 16 motions hearing, defense counsel brought up another case in the jurisdiction in which a different court found that the same district attorney's office had committed several discovery violations, but the district court here declined to find a pattern of neglect based on the other case.  Instead, the court based its pattern finding on the multiple violations existing within this single case.  It is unclear whether a court can find a pattern of neglect within a single case and, if so, whether the facts of this case establish such a pattern.  But as the party with the burden on appeal, the People fail to develop that argument, so we accept the district court's pattern finding.  *See People v. Thompson*, 2017 COA 56, ¶ 199 (declining to review an argument that was not "sufficiently developed" (citation omitted)); *Rego Co. v. MckOwn-Katy*, 801 P.2d 536, 540 (Colo. 1990) ("[T]he burden is on the party asserting error to show reversible error.").

evidence." Ultimately, the court determined that it need not find prejudice to issue a punitive or deterrent sanction for the discovery violations.

### 3. The District Court Did Not Abuse Its Discretion by Dismissing Ten Counts as a Sanction

¶ 21 The People contend that the district court abused its discretion because (1) the court failed to make adequate findings to support the sanction, and (2) the sanction is too severe based on the lack of prejudice to Burney. We are not persuaded.

¶ 22 Although the district court did not make separate findings on each *Tippet* factor, it recited the *Tippet* factors, and its ruling reflects that it considered those factors when selecting an appropriate deterrent sanction. We understand the court to have found that (1) fifty-two discovery violations within six months constituted a pattern of neglect within this case; (2) the district attorney's office had willfully redacted the forensic interview; (3) Burney suffered prejudice based on the volume of late disclosures, as well as the late endorsements of witnesses; (4) the prejudice to Burney was mitigated by the amount of time he had to review the discovery; (5) the prosecution failed to take responsibility

11

for even "blatant Rule 16 violations"; and (6) based on the totality of the circumstances, a deterrent sanction was appropriate. *See Tippet*, ¶ 37. Even if we assume that there were only twenty-nine separate violations, the court still made an adequate record to support its chosen sanction.

¶ 23 The People do not explain how any *Tippet* factor other than the lack of prejudice weighs in their favor. We agree with the People that the prejudice to Burney from the delayed disclosure was largely mitigated by the fact that he received the information months in advance of trial. But one factor in a multi-factor test is generally not dispositive. *See People v. Brown*, 2014 CO 25, ¶ 24 (adopting a "multi-factor test" and "reiterat[ing] that no single factor is dispositive and the weight accorded to each factor will vary depending on the specific facts at issue in the case"). And the court was entitled to give the prejudice factor less weight when imposing a deterrent, as opposed to a curative, sanction. *See Tippet*, ¶ 61 (rejecting the People's argument that the court's deterrent sanction was inappropriate because the defendant suffered little prejudice); *see also Lee*, 18 P.3d at 196 ("Because of the multiplicity of considerations involved and the uniqueness of each case, great

12

deference is owed to trial courts" when imposing a discovery sanction.).

¶ 24    The People also argue that the imposed sanction is too severe because it is harsher than anything defense counsel requested. But the district court was not limited to choosing among the options that defense counsel presented. *See Tippet*, ¶ 34 (the trial court has broad discretion to craft a discovery sanction); *People v. Copeland*, 976 P.2d 334, 338 (Colo. App. 1998) ("The choice of an appropriate sanction for a violation of a discovery rule lies within the sound discretion of the trial court."), *aff'd*, 2 P.3d 1283 (Colo. 2000). The Colorado Supreme Court has "long recognized in deterrent sanction cases that 'the exclusion of evidence or even complete dismissal can be proper remedies to assure compliance with discovery orders.'" *Tippet*, ¶ 39 (quoting *Lee*, 18 P.3d at 196). Based on the totality of the circumstances, the court chose to dismiss the last ten counts added in May 2025 as a deterrent sanction, and we perceive no abuse of discretion in that choice.

¶ 25    We are also unpersuaded by the People's argument that the court imposed a "double sanction[]" by denying their request to use evidence of the dismissed counts as CRE 404(b) evidence at

13

Burney's trial. As the court explained, allowing the prosecution to use the evidence would undermine the sanction the court imposed. *See Tippet*, ¶ 34; *Copeland*, 976 P.2d at 338. And the People may not use this appeal to seek review of the court's pretrial evidentiary ruling. *See Phillips v. People*, 2026 CO 21, ¶ 51 ("C.A.R. 4.1(a) does not permit interlocutory appeals of pretrial *evidentiary* rulings."); *see also* C.A.R. 4(b)(6)(B) (appeals of orders dismissing one or more but less than all counts are conducted pursuant to the procedures set forth in C.A.R. 4.1).[2]

¶ 26     In the end, we conclude that the district court did not abuse its discretion by dismissing ten counts as a sanction for the prosecution's Crim. P. 16 violations. The record also makes clear that the court would have imposed the same sanction whether the violations numbered fifty-two or twenty-nine because the court's primary concern was that the prosecution had engaged in a substantial pattern of violations over a short period of time, a

---

[2] For the first time in the reply brief, the People argue that the court failed to tie the dismissal of counts twenty-one through thirty to the discovery violations or explain how dismissing those counts deters future discovery violations. We decline to address this argument. *See People v. Woodyard*, 2023 COA 78, ¶ 15 n.3 ("[W]e don't consider arguments made for the first time in a reply brief.").

concern that would not be ameliorated if the violations still numbered twenty-nine. Thus, we affirm without remanding for reconsideration of the sanction. *Cf. People v. Loveall*, 231 P.3d 408, 416 (Colo. 2010) (when one or more bases for probation revocation are set aside, affirmance without remand is appropriate only when the record clearly shows that the trial court would have reached the same result based on the remaining violations).

## III. Disposition

¶ 27     We affirm the district court's order.

JUDGE HARRIS and JUDGE TOW concur.